**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BEN PHETTEPLACE,<br><br>　　　　　Plaintiff,<br>v.<br><br>CANCER GENETICS, INC., et al.,<br><br>　　　　　Defendants. | Civil Action No.<br>2:18-CV-05612-ES-SCM<br><br>**MOVANT'S MOTIONS TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFF & APPOINT LEAD COUNSEL**<br><br>**[D.E. 5]** |

## REPORT AND RECOMMENDATIONS

**STEVEN C. MANNION**, United States Magistrate Judge.

　　Before the Court is Movant Randy Clark's motions to consolidate related actions, appoint lead plaintiff, and appoint lead counsel.[1] Movant Ruo Fen Zhang moved for the Court to appoint her as lead plaintiff, but later withdrew the motion.[2] Accordingly, Mr. Clark's motions are unopposed.[3] The Honorable Esther Salas, U.S.D.J., referred the pending motions to the undersigned for a report and recommendation.[4] After considering Mr. Clark's submission without oral argument and for the reasons set forth herein, the undersigned respectfully recommends that the Court **GRANT** Mr. Clark's motions.

---

[1] (ECF Docket Entry ("D.E.") 5, Pl.'s Mot.).

[2] (D.E. 12, Notice of Withdrawal).

[3] (D.E. 13, Notice of Non-Opposition).

[4] L. Civ. R. 72.1(a)(2).

I.  **BACKGROUND AND PROCEDURAL HISTORY**[5]

Plaintiff Ben Phetteplace brought this putative securities class action alleging violations of the Securities Exchange Act of 1934 ("the Exchange Act").[6] According to Mr. Phetteplace, Defendant Cancer Genetics, Inc. ("Cancer Genetics") and its employees Panna L. Sharma, John A. Roberts, and Igor Gitelman made misleading statements and material omissions which artificially inflated the market price of the company's securities, causing damage to the class plaintiffs.[7]

Mr. Phetteplace claims that he purchased Cancer Genetics securities at artificially inflated prices and suffered a loss upon revelation of the company's alleged corrective disclosure.[8] The putative class consists of "all those who purchased or otherwise acquired the publicly traded securities of Cancer Genetics"[9] between March 23, 2017, and April 2, 2018.

Although Mr. Phetteplace filed the Complaint in this matter, at issue currently is Mr. Clark's motions to consolidate related actions, appoint lead plaintiff, and appoint lead counsel.[10] Mr. Clark alleges that, on January 16, 2018, he purchased 75,000 shares of Cancer Genetics stock at a price of $2.07 per share.[11] He later sold those shares on April 3, 2018, at a price of $1.06 per

---

[5] The allegations set forth within the pleadings and motion record are relied upon for purposes of these motions only. The Court has made no findings as to the veracity of the parties' allegations.

[6] 15 U.S.C. § 78a-qq.

[7] (D.E. 1, Pl.'s Compl., at ¶¶ 42-46).

[8] (D.E. 1, Pl.'s Compl., at ¶ 6).

[9] (D.E. 1, Pl.'s Compl., at ¶ 30).

[10] (D.E. 5, Pl.'s Mot.).

[11] (D.E. 5-7, Clark Loss Chart).

share, resulting in a $75,750.00 loss.[12] Mr. Clark seeks to consolidate this matter with *Zhang v. Cancer Genetics, Inc.*, No. 18-cv-06353, a related action also pending in this Court, and asks the Court to appoint him lead plaintiff in this matter and name Laurence M. Rosen, Esq., as lead counsel for the class.[13]

## II.  **LEGAL STANDARD**

Under Rule 42, a court may consolidate pending actions that involve a common question of law or fact.[14] "While the existence of common issues is a prerequisite for consolidation, their mere presence does not compel consolidation."[15] When exercising its discretion to consolidate, a court should weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice."[16]

The Private Securities Reform Litigation Act ("the Securities Reform Act") states that, in private securities class actions alleging violations of the Exchange Act, a party may move for the court to appoint them lead plaintiff in the action.[17] In such cases, a court may appoint lead plaintiff only after deciding the consolidation motion.[18] The court shall then appoint as lead plaintiff the

---

[12] *Id.*

[13] (D.E. 5, Pl.'s Mot., at 2).

[14] Fed. R. Civ. P. 42(a)(2).

[15] *Margolis v. Hydroxatone, LLC*, No. 11-4355, 2013 WL 875987 at *3 (D.N.J. Mar. 6, 2013) (citing *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80 (D.N.J. 1993)).

[16] *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (citation omitted).

[17] 15 U.S.C. § 78u-4(a)(3)(B)(i).

[18] 15 U.S.C. § 78u-4(a)(3)(B)(ii).

member or members of the class that the court determines to be most capable of adequately representing the interests of the class members.[19]

In general, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that (1) has either filed the complaint or made a motion in response to a notice of the pending suit; (2) has the largest financial interest in the suit; and (3) otherwise satisfies the requirements of Rule 23.[20] As to the second factor, where a movant's motion to appoint lead plaintiff is unopposed and the movant has a significant financial interest in the action, courts have held that they satisfy the largest financial interest requirement.[21]

Turning to the third factor, even where the proposed lead plaintiff's motion is unopposed, the court must conduct a preliminary, fact-specific inquiry to determine whether the presumptively most adequate plaintiff satisfies the requirements of Rule 23.[22] This inquiry focuses solely on the Rule 23(a)(3) typicality requirement and the Rule 23(a)(4) adequacy requirement.[23] Courts have noted that a wide-ranging analysis under Rule 23 is not appropriate at this early stage of the litigation and that the court should conduct such an analysis in the context of a motion for class certification.[24]

---

[19] 15 U.S.C. § 78u-4(a)(3)(B)(i).

[20] 15 U.S.C. § 78u-4(a)(3)(B)(iii).

[21] *See In re Lucent Techs., Inc., Sec. Litig.*, 194 F.R.D. 137, 148-49 (D.N.J. 2000); *see also Koppel v. 4987 Corp.*, No. 96-7570, 1999 WL 608783 at *8 (S.D.N.Y. Aug. 11, 1999).

[22] *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999) (citing *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998)).

[23] *Id.* (quoting *Gluck v. CellStar Corp.*, 976 F. Supp 542, 546 (N.D. Tex. 1997)).

[24] *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999) (citing *Fischler v. AMSouth Bancorporation*, No. 96-1567, 1997 WL 118429 at *2 (M.D. Fla. Feb. 6, 1997)).

A proposed lead plaintiff satisfies the Rule 23(a)(3) typicality requirement if their claim arises from the same event or course of conduct as the claims of the class members.[25] Where plaintiff's factual or legal stance is different from those of the other class members, they fail to establish typicality.[26]

Next, a proposed lead plaintiff satisfies the Rule 23(a)(4) adequacy requirement if they have common interests with the class and a willingness "to vigorously prosecute the action."[27] Where a movant has interests antagonistic to those of the class, it fails to meet the adequacy requirement.[28] Where a motion for appointment of lead plaintiff is unopposed, a significant financial stake in the litigation, alone, provides an adequate incentive to vigorously prosecute the action.[29]

Additionally, when considering adequacy, courts must determine whether plaintiff's proposed lead attorney is qualified, experienced, and generally able to conduct the proposed litigation.[30] A movant fails this inquiry if it selects as lead counsel an attorney who is "plainly incapable" of undertaking the representation.[31] The Third Circuit has held that there is "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel

---

[25] *In re Party City*, 189 F.R.D. at 107 (citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)).

[26] *Gunter v. Ridgewood Energy Corp.*, 164 F.R.D. 391, 395 (D.N.J. 1996) (quoting *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984)).

[27] *In re Milestone Sci. Sec. Litig*, 183 F.R.D. at 416.

[28] *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)).

[29] *See id.*; *see also In re Cendant Corp. Litig.*, 182 F.R.D. 144, 147-48 (D.N.J. Sept. 8, 1998).

[30] *Wetzel*, 508 F.2d at 247.

[31] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 265-66 (3d Cir. 2001).

selection and counsel retention."[32] Therefore, the question at this stage is not whether the movant could have chosen a better lawyer but whether a movant's choice of counsel is "so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class."[33]

### III.     DISCUSSION

### A.     Consolidation

Pursuant to the provisions of the Securities Reform Act,[34] the Court must first determine whether consolidation of this matter with *Zhang v. Cancer Genetics, Inc.*, No. 18-cv-06353, is appropriate. Rule 42 provides the Court with broad discretion to consolidate multiple pending actions if they involve common questions of law or fact.[35] This Rule grants the Court broad discretionary powers. When exercising its discretion to consolidate cases, a court should weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice."[36]

The Court finds that the issues of law and fact in this matter are substantially the same as those in *Zhang v. Cancer Genetics, Inc.*, No. 18-cv-06353. The two complaints make the same essential allegations: that Cancer Genetics and the individual Defendants made materially false and misleading statements which artificially inflated the value of the company's securities and

---

[32] *Id.* at 266.

[33] *See id*.

[34] 15 U.S.C. § 78u-4(a)(3)(B)(ii).

[35] Fed. R. Civ. P. 42(a)(2); *Durso v. Samsung Elecs America, Inc.*, No. 12-05352, 2014 WL 1232332 at *1 (D.N.J. Mar. 24, 2014) (citing *Liberty Lincoln Mercury, Inc. v. Ford Mktg Corp.*, 149 F.R.D. 65, 80-81 (D.N.J. 1993)).

[36] *In re Consol. Parlodel Litig.*, 182 F.R.D. at 444 (citation omitted).

damaged the putative class plaintiffs.[37] Both complaints name the same defendants, allege violations of the same statutes, and arise out of the same factual underpinnings.[38] Consequently, the Court finds that these two matters "are based on substantially the same conduct, involve substantially the same claims, and name the same defendants."[39]

Further, the interests of judicial economy dictate that the Court should consolidate these two matters. Put simply, if the Court declined to consolidate these actions, it would result in wasteful and duplicative litigation and would not "secure the just, speedy, and inexpensive determination"[40] of these controversies. Furthermore, the Court sees no reason to believe that consolidation of these actions would result in unnecessary delays, expense, or confusion.[41] Accordingly, the Court finds that consolidation of these matters is appropriate.

**B.     Appointment of Lead Plaintiff**

As a preliminary matter, the Court notes that Mr. Clark has satisfied the procedural requirements of the Securities Reform Act by filing his motion within 60 days of the notice of suit.[42] Next, the Court must determine whether Mr. Clark satisfies the substantive requirements for appointment of lead plaintiff under the Securities Reform Act. In general, there is a rebuttable

---

[37] *Compare* (D.E. 1, Pl.'s Compl., at ¶¶ 17-22) *with* (No. 18-cv-06353, D.E. 1, Zhang Compl., at ¶¶ 23-31).

[38] *Compare* (D.E. 1, Pl.'s Compl., at ¶¶ 6-15) *with* (No. 18-cv-06353, D.E. 1, Zhang Compl., at ¶¶ 14-20).

[39] *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075 at *2 (D.N.J. Dec. 2, 2016).

[40] Fed. R. Civ. P. 1.

[41] *In re Consol. Parlodel Litig.*, 182 F.R.D. at 444 (holding that in exercising its discretion, a court should weigh the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice).

[42] 15 U.S.C. 78u-4(a)(3)(A)(i)(II); (D.E. 5-3, Decl. of Laurence Rosen, at ¶ 2).

presumption that the most adequate plaintiff is the member of the putative class that has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23.[43]

### i. The Largest Financial Interest Requirement

Mr. Clark alleges that, on January 16, 2018, he purchased 75,000 shares of Cancer Genetics stock at a price of $2.07 per share.[44] He later sold those shares on April 3, 2018 at a price of $1.06 per share, resulting in a $75,750.00 loss.[45] In his brief in support of this motion, Mr. Clark states that he is unaware of any other plaintiff that has suffered greater losses in Cancer Genetics securities during the class period.[46] Because Mr. Clark's motion is unopposed, by default he satisfies the largest financial interest requirement.[47]

### ii. The Rule 23 Requirements

Next, the Court must determine whether Mr. Clark satisfies the requirements of Rule 23. Courts have noted that such a determination in the context of a motion for appointment of lead plaintiff is not as wide-ranging or in-depth as in a class certification hearing.[48] This preliminary inquiry focuses solely on the Rule 23(a)(3) typicality requirement and the Rule 23(a)(4) adequacy requirement.[49]

---

[43] 15 U.S.C. § 78u-4(a)(3)(B)(iii).

[44] (D.E. 5-7, Clark Loss Chart).

[45] *Id.*

[46] (D.E. 5-2, Pl.'s Br., at 5).

[47] *See In re Lucent Techs., Inc., Sec. Litig.*, 194 F.R.D. at 148-49; *see also Koppel*, 1999 WL 608783 at *8.

[48] *See Fischler*, 1997 WL 118429 at *2.

[49] *See In re Party City*, 189 F.R.D. at 106.

In this matter, Mr. Clark's claims and legal theories are "substantially the same"[50] as those of the rest of the class. Like the other members of the class, Mr. Clark alleges that Cancer Genetics and the individual defendants violated the Exchange Act by failing to disclose material facts about Cancer Genetics' business and financial condition.[51] He and the rest of the putative class allege that, due to these omissions and misrepresentations, they purchased Cancer Genetics securities at artificially inflated prices and suffered damages as a result.[52]

Mr. Clark and the rest of the putative class base their claims on the same course of conduct and alleged violations of the same statutes. Nothing about his factual or legal posture shows that he will not fairly and adequately protect the interests of the class members, and his significant financial stake in this litigation in itself provides an adequate incentive to vigorously prosecute the action.[53] In addition, as discussed below, his chosen counsel appears to be willing and able to zealously advocate on behalf of the class.

Accordingly, the Court finds that Mr. Clark satisfies the Rule 23(a)(3) typicality requirement and the Rule 23(a)(4) adequacy requirement for the purposes of this motion.

## C.     Appointment of Lead Counsel

Once the Court has appointed a lead plaintiff, the Securities Reform Act dictates that this person or persons shall, subject to the approval of a court, select and retain counsel to represent

---

[50] *See Lewis*, 2016 WL 7042075 at *2.

[51] *Compare* (D.E. 5-2, Pl.'s Br., at 6) *with* (D.E. 1, Pl.'s Compl., at ¶¶ 17-22).

[52] *Compare* (D.E. 5-2, Pl.'s Br., at 7) *with* (D.E. 1, Pl.'s Compl., at ¶ 30).

[53] *See Wetzel*, 508 F.2d at 247.

9

the class.[54] The Court's inquiry is limited to whether plaintiff's chosen attorney is qualified, experienced, and generally able to conduct the proposed litigation.[55]

Mr. Clark has proposed that the Court appoint Laurence M. Rosen, Esq. as lead counsel for the class and has submitted a detailed statement of Mr. Rosen's qualifications and experience.[56] This statement includes a list of dozens of past and pending securities class actions in which Mr. Rosen and his firm have served as lead or co-lead counsel in this Court and courts across the country.[57]

The Court finds that Mr. Rosen and the Rosen Law Firm have the requisite experience, expertise, and credentials to adequately represent the class as lead counsel. The Court sees no evidence to show that Mr. Clark's choice of counsel is "so deficient as to demonstrate that [he] will not fairly and adequately represent the interests of the class."[58] Accordingly, the Court finds that it is appropriate to appoint Laurence M. Rosen as lead counsel in this matter.

## IV.   **RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** Mr. Clark's motions to consolidate, appoint lead plaintiff, and appoint lead counsel.  The

---

[54] 15 U.S.C. § 78u-4(a)(3)(B)(v).

[55] *Wetzel*, 508 F.2d at 247.

[56] (D.E. 5-8, Rosen Biography).

[57] (D.E. 5-8, Rosen Biography, at 8-41).

[58] *In re Cendant Corp. Litig.*, 264 F.3d at 266.

parties have fourteen days to file and serve any objections to this report and recommendation.[59]

"The District Court need not consider frivolous, conclusive, or general objections."[60]



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

8/7/2018 3:58:30 PM

Original: Clerk of the Court
Hon. Esther Salas, U.S.D.J.
cc: All parties
   File

---

[59] 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

[60] *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

11