

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CIVIL ACTION NUMBER:

IN RE

2:18-cv-05612-ES-SCM

CANCER GENETICS, INC.
SECURITIES LITIGATION,          DECISION

Pages 1 - 18

Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101
Tuesday, February 25, 2020

B E F O R E:              THE HONORABLE ESTHER SALAS,
UNITED STATES DISTRICT JUDGE

Mary Jo Monteleone, Official Court Reporter
maryjomonteleone@gmail.com
(973) 580-5262

 1          (PROCEEDINGS held in open court before The Honorable

 2     ESTHER SALAS, United States District Judge.)

 3          THE COURT:  We are on the record in the matter of *In*

 4     *re Cancer Genetics Securities Litigation*, Civil Action Number

 5     18-5612.

 6          Before the Court is defendant Cancer Genetics, Panna

 7     Sharma, Edward Sitar, John Roberts, and Igor Gitelman's motion

 8     to dismiss the consolidated Amended Class Action Complaint

 9     under Federal Rule of Civil Procedure 9(b) and under the

10     Private Securities Litigation Reform Act- hereinafter referred

11     to as the PSLRA.  (Docket Entry Number 31).  I have considered

12     the parties' written submissions and heard oral argument on

13     February 20, 2020, and I am now prepared to rule.

14          As alleged in the Amended Class Action Complaint,

15     Plaintiff brings claims under Sections 10(b) and 20(a) of the

16     Securities Exchange Act against the Defendants.  (*See* Docket

17     Entry Number 31 at Count I, paragraphs 113 through 122, and at

18     Count II, paragraphs 123 through 128).  Plaintiff's claims

19     stem from the Defendants' April 2, 2018 disclosures regarding

20     Cancer Genetics's $1.8 million write-off in accounts

21     receivable and 4.4 million bad debt expense that were related

22     to the company's acquisition of Response Genetics in 2015.

23     (Docket Entry Number 31 at paragraphs 2, 78 & 80).  The

24     Defendants move to dismiss all claims for failure to plead (i)

25     misrepresentations or omissions; (ii) scienter and (iii) loss

1    causation.  (*See generally* Docket Entry Number 31-1).

2           Federal Rule of Civil Procedure 9(b) states that when

3    alleging fraud, a party must state with particularity the

4    circumstances constituting fraud.  In order to satisfy Rule

5    9(b), a complaint must provide all of the essential factual

6    background that would accompany the first paragraph of any

7    newspaper story- that is, the who, what, when, where and how

8    of the events at issue.  *In re Rockefeller Center Properties*

9    *Incorporated Securities Litigation*, 311 F.3d 198, at page 217

10   (Third Circuit 2002).  In other words, a complaint must state

11   the circumstances of the alleged fraud with sufficient

12   particularity to place the defendant on notice of the precise

13   misconduct with which it is charged.  *Frederico v. Home Depot*,

14   507 F.3d 188, at page 200 (Third Circuit 2007).

15          The Court also observes that there are certain

16   heightened pleading standards under the Private Securities

17   Litigation Reform Act of 1995, 15 U.S.C. Section 78u-4.  The

18   PSLRA imposes two exacting and distinct pleading requirements

19   for securities fraud actions.  *In re Aetna, Incorporated*

20   *Securities Litigation*, 617 F.3d 272, at pages 277 through 278

21   (Third Circuit 2010).  First, a complaint bringing a Section

22   10(b) or Section 20(a) claim that is based on an untrue

23   statement of a material fact, or an omission of a material

24   fact necessary in order to make the statements made, in the

25   light of the circumstances in which they were made not

1  misleading, must specify each statement alleged to have been

2  misleading, and the reason or reasons why the statement is

3  misleading.  15 U.S.C. Section 78u-4(b)(1).  Rule 9(b)'s

4  particularity requirement is comparable to and effectively

5  subsumed by the requirements of Section 78u4(b)(1) of the

6  PSLRA.  *Institutional Inv'rs Grp. V. Avaya, Inc.*, 564 F.3d

7  242, at page 253 (Third Circuit 2009).  Second, the complaint

8  must, with respect to each act or omission alleged to violate

9  this chapter, state with particularity facts giving rise to a

10 strong inference that the defendant acted with the required

11 state of mind.  15 U.S.C. Section 78u-4(b)(2)(A); *see also In*

12 *re Aetna*, 617 F.3d at pages 277 through 278.  The PSLRA thus

13 unequivocally raised the bar for pleading scienter.  *See*

14 *Tellabs, Incorporated v. Makor Issues & Rights, Limited*, 551

15 U.S. 308, at page 321 (2007).

16        Specifically, in determining whether the pleaded

17 facts give rise to a strong inference of scienter, the Court

18 must take into account plausible opposing inferences.  *Id.* at

19 323.  A complaint will survive only if a reasonable person

20 would deem the inference of scienter cogent and at least as

21 compelling as any opposing inference one could draw from the

22 facts alleged.  *Id.* at 324.  Thus, the Court must consider all

23 the arguments presented by the Amended Complaint and the

24 parties' briefing and assess scienter holistically.  *OFI Asset*

25 *Management v. Cooper Tire and Rubber*, 834 F.3d 481 at page 493

Colloquy 5

1    (Third Circuit 2016).

2         Section 10(b) of the Securities Exchange Act of 1934

3    and the Securities and Exchange Commission's Rule 10b5

4    prohibit making any material misstatement or omission in

5    connection with the purchase or sale of any security.

6    *Halliburton Company v. Erica P. John Fund, Incorporated*, 573

7    U.S. 258, at page 267 (2014).  The imputation of securities

8    law violations to an employer is proper based on acts

9    committed by one of its agents within his actual or apparent

10   scope of authority.  *See, e.g.*, *Belmont v. MB Investment*

11   *Partners, Incorporated*, 708 F.3d 470, at page 496 (Third

12   Circuit 2016).  To recover damages for violations of section

13   10(b) and Rule 10b5, a plaintiff must prove (i) a material

14   misrepresentation or omission by the defendant; (ii) scienter;

15   (iii) a connection between the misrepresentation or omission

16   and the purchase or sale of a security; (iv) reliance upon the

17   misrepresentation or omission; (v) economic loss; and (vi)

18   loss causation.  *Halliburton*, 573 U.S. at page 267.

19         The Court will first address whether the Plaintiff

20   properly pleads material misrepresentations.  To prevail on a

21   Section 10(b) claim, a plaintiff must show that the defendant

22   made a statement or an omission that was misleading as to a

23   material fact.  *Matrixx Initiatives, Incorporated v.*

24   *Siracusano*, 563 U.S. 27, at page 38 (2011).  Materiality

25   requires a delicate assessment of the inferences a reasonable

1  shareholder would draw from a set of facts. *TSC Industries,*

2  *Incorporated v. Northway, Incorporated*, 426 U.S. 438, at page

3  450 (1976); *ED Medsystems, Incorporated v. EchoCath,*

4  *Incorporated*, 235 F.3d 865 at page 875 (Third Circuit 2000).

5  Some statements may be so facially insignificant to a

6  reasonable investor that they are inactionable puffery. *In re*

7  *Cognizant Technology Solutions Corporation Securities*

8  *Litigation*, 2018 WL 3772675, at page 15 (District of New

9  Jersey August 8, 2018) (citing *City of Edinborough Council v.*

10 *Pfizer, Incorporated*, 754 F.3d 159, at page 172 (Third Circuit

11 2014)).  Thus, courts have held that vague and general

12 statements of optimism constitute no more than puffery and are

13 understood by reasonable investors as such. *See, e.g.,* *In re*

14 *Advanta Corroboration Securities Litigation*, 180 F.3d 525, at

15 pages 538 through 539 (Third Circuit 1999).  Moreover, in the

16 context of Sarbanes Oxley Certifications that are preceded by

17 qualifying statements of belief such as "based on our most

18 recent evaluation of internal controls," falsity of the

19 statement is entirely dependent on what the certifier knew,

20 not what was objectively true at the time of the statement.

21 *In re Cognizant Technology*, 2018 WL 3772675, at page 25.

22         Additionally, under the PSLRA's Safe Harbor the

23 defendant on a Section 10(b) or Section 20(a) claim shall not

24 be liable with respect to any forward-looking statement,

25 whether written or oral, if and to the extent the statement is

Colloquy                                    7

1  (i) identified as a forward-looking statement, and is

2  accompanied by meaningful cautionary statements identifying

3  important factors that could cause actual results to differ

4  materially from those in the forward-looking statement; or

5  (ii) immaterial.  15 U.S.C. Section 78u5(c)(1)(A).  Nor would

6  the defendant be liable if the plaintiff fails to prove that

7  the forward-looking statement was made with actual knowledge

8  by that person that the statement was false or misleading.  15

9  U.S.C. Section 78u5(c)(1)(B); *see also, e.g., City of*

10 *Edinburgh Council*, 754 F.3d at page 170.

11        To adequately state a claim under the federal

12 securities laws, it is not enough merely to identify a

13 forward-looking statement and assert as a general matter that

14 the statement was made without a reasonable basis.  *See In re*

15 *Burlington Coat Factory Securities Litigation*, 114 F.3d 1410

16 at page 1429 (Third Circuit 1997).  Rather, a plaintiff has

17 the burden to plead factual allegations, not hypotheticals,

18 sufficient to reasonably allow the inference that the forecast

19 was made with either (i) an inadequate consideration of the

20 available data or (ii) the use of unsound forecasting

21 methodology.  *Id.*

22        Based on the lengthy discussion during oral argument,

23 the Court finds that the Amended Complaint fails to allege

24 actionable misstatements or omissions.  First, Plaintiff

25 conceded during oral argument that statements made by

1    Mr. Sharma and Mr. Sitar in the October 12, 2015 press release

2    and during the November 10, 2015 earnings call are

3    non-actionable statements that fall outside of the defined

4    Class Period- March 10, 2016 through April 2, 2018.  (*See also*

5    Docket Entry Number 35 at page 16, footnote 10).

6          Second, the Court finds that the remaining

7    allegations do not amount to actionable statements because

8    they are akin to mere puffery or forward-looking statements

9    that are protected under the PSLRA's Safe Harbor.  As

10   discussed in detail with the parties, the Amended Complaint

11   fails to allege how the speaker knew his statements were false

12   at the time he made them.  Similarly, many statements reflect

13   non-specific statements of optimism or hope that are simply

14   too vague to be actionable.  *See In re Burlington*, 114 F.3d at

15   page 1427.  This is particularly so given the overall context

16   of the Defendants' statements, including additional language

17   that accompanied the Defendants' statements when made.

18         Accordingly, the Court finds that many of the

19   statements at issue here are similar to the forward-looking

20   statement in *Burlington*, where the defendant company stated

21   that it believed it "could continue to grow net earnings at a

22   faster rate than sales."  114 F.3d at page 1427.  In addition,

23   the Court concludes that the remaining allegations fail to

24   sufficiently plead how defendants Sharma, Roberts and Gitelman

25   knew that the statements made in Cancer Genetics's Form 10-K

1   and Form 10-Q filings were, in fact, false when made.  *See In*

2   *re Cognizant Technology*, 2018 WL 3772675, at page 25.

3          Next, the Court turns to whether Plaintiff adequately

4   pled scienter.  To establish liability under Section 10(b) and

5   Rule 10b5, a private plaintiff must prove that the defendant

6   acted with scienter, a mental state embracing intent to

7   deceive, manipulate, or defraud.  *Matrixx Initiatives*, 563

8   U.S. at page 48; *Tellabs*, 551 U.S. at page 319.  A plaintiff

9   must state with particularity facts giving rise to a strong

10  inference that the defendant acted with the required state of

11  mind.  *Rahman v. Kid Brands, Incorporated*, 736 F.3d 237, at

12  page 242 (Third Circuit 2013).  The Court should view the

13  allegations collectively and is not to scrutinize each

14  allegation in isolation but to assess all the allegations

15  holistically.  *Tellabs*, 551 U.S. at page 326.  A securities

16  plaintiff's mere allegations from which an inference of

17  scienter rationally could be drawn are insufficient.  *Id.* at

18  page 310.  Rather, to qualify as a strong inference, the facts

19  alleged must be cogent and compelling in light of other

20  explanations.  *Id.*

21         Under the PSLRA's exacting pleading standard for

22  scienter, any private securities complaint alleging that the

23  defendant made a false or misleading statement must state with

24  particularity facts giving rise to a strong inference that the

25  defendant acted with the required state of mind.  *Rahman*, 736

1    F.3d 237 at pages 243 through 244; *Avaya*, 564 F.3d 242 at page

2    253.  Moreover, a plaintiff may plead scienter under the PSLRA

3    by alleging facts that constitute circumstantial evidence of

4    either reckless or conscious behavior.  *Gold v. Ford Motor*

5    *Company*, 577 Federal Appendix 120 at page 123 (Third Circuit

6    2014).  Recklessness is an extreme departure from the

7    standards of ordinary care, which presents a danger of

8    misleading buyers or sellers that is either known to the

9    defendant or is so obvious that the actor must have been aware

10   of it.  *Id.*

11          When a plaintiff relies on information from

12   confidential witnesses to plead scienter, the witnesses need

13   not be named as long as they are described in the complaint

14   with sufficient particularity to support the probability that

15   a person in the position occupied by the source would possess

16   the information alleged.  *Rahman*, 736 F.3d at page 244.

17   Moreover, courts should assess the detail provided by the

18   confidential sources, the sources' basis of knowledge, the

19   reliability of the sources, the corroborative nature of other

20   facts alleged, including from other sources, the coherence and

21   plausibility of the allegations, and similar indicia.

22   *California Pub. Employees' Retirement System v. Chubb*

23   *Corporation*, 394 F.3d 126 at page 147 (Third Circuit 2004).

24   The court should not be left to speculate whether the

25   anonymous sources obtained the information they purport to

1    possess by firsthand knowledge or rumor.  *Id.* at page 148.

2    Thus, the complaint should allege facts to support the

3    probability that the source possesses the information alleged.

4    *Id.* at 155.  Significantly, generic and conclusory allegations

5    based upon rumor or conjecture are undisputedly insufficient

6    to satisfy the heightened pleading standard of 15 U.S.C.

7    Section 78u4(b)(1).  *Id.*

8            While the Third Circuit recognizes that motive and

9    opportunity may no longer serve as an independent route to

10   scienter in the wake of *Tellabs*'s instructions to consider the

11   complaint in its entirety, particularized allegations

12   regarding motive and opportunity may, *in combination with*

13   *other allegations* (emphasis on in combination with other

14   allegations), support a strong inference of scienter.  *In re*

15   *Amarin Corporation PLC.*, civil action number 13-6663, 2015 WL

16   3954190, at page 10 (D.N.J. June 29, 2015); *see also Avaya*,

17   564 F.3d at page 268.  Blanket assertions of motive and

18   opportunity are insufficient, and catch-all allegations that

19   defendants stood to benefit from wrongdoing and had the

20   opportunity to implement a fraudulent scheme are also

21   insufficient because they do not state facts with

22   particularity or give rise to a strong inference of scienter.

23   *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, at page 237

24   (Third Circuit 2004).

25           In addition, motives that are generally possessed by

1   most corporate directors and officers do not suffice; instead,

2   a plaintiff must assert a concrete and personal benefit to the

3   individual defendants resulting from this fraud.  *Id.*  The

4   Second Circuit has stated that incentive compensation can

5   hardly be the basis on which an allegation of fraud is

6   predicated.  *Kalnit v. Eichler*, 264 F.3d 131, at pages 139

7   through 140 (Second Circuit 2001).  Moreover, resignations or

8   terminations might form a piece to the scienter puzzle if, for

9   example, a relatively contemporaneous and public firing is

10  accompanied by extreme corporate punishment such as the denial

11  of previously accrued benefits.  *Fain v. USA Technologies,*

12  *Incorporated*, 707 Federal Appendix 91, at page 97 (Third

13  Circuit 2017).  In *Fain*, the Court noted that a defendant's

14  receipt of a significant severance package upon resignation

15  provided little evidence of scienter.  *Id.*

16          In light of the parties' extensive discourse at oral

17  argument, the Court concludes that the totality of the

18  allegations in the Amended Complaint do not reflect that the

19  Defendants had the requisite degree of scienter.  *See Tellabs*,

20  551 U.S. at pages 331 through 333.  Rather, the more cogent

21  inference is that the Defendants became aware of issues with

22  respect to the acquisition of Response Genetics and related

23  collections *after* (emphasis on after) they engaged third-party

24  consultants to evaluate Cancer Genetics's accounts

25  receivable.  *See Id.* at page 310.  The Third Circuit has

1   commented on the difficulty of establishing a

2   "they-must-have-known" type of inference.  For example, in

3   *Fain*, the Court found no scienter when plaintiffs relied on

4   defendants' positions at the company, the obvious nature of

5   the error, and the subsequent actions to remediate.  707

6   Federal Appendix at page 96.  Moreover, in order to plead

7   recklessness on the basis of an internal control deficiency's

8   magnitude, a plaintiff's facts must add up to a cogent

9   inference that the danger of misleading investors was either

10  actually known by Defendants or so obvious that the actor must

11  have been aware of it.  *In re Advanta*, 180 F.3d at page 539.

12  Here, Plaintiff fails to point to signs of deficiencies that

13  are so obvious that the Defendants must have known of specific

14  issues with respect to the integration of Response Genetics.

15          As noted on the record during oral argument, the

16  Court finds that the information attributable to Plaintiff's

17  confidential witnesses is generic and conclusory at most and

18  is largely based upon rumor or conjecture.  **Accordingly, this**

19  **information is at best unreliable.**  *See Chubb Corporation*,

20  394 F.3d at page 155.  Moreover, based on the confidential

21  witnesses' apparent positions and supervisors, it is unclear

22  how a majority of the information gleaned from these witnesses

23  is (i) reliable and (ii) attributable to the individual

24  defendants.  *See id.*  Similarly, Plaintiff's remaining

25  allegations that speak to motive and opportunity do not, in

1   combination with the remaining allegations, establish the

2   requisite level of scienter.  *See In re Amarin*, 2015 WL

3   3954190, at page 10.

4           Further, allegations that defendants Sharma and

5   Roberts signed Sarbanes-Oxley Certifications attesting to the

6   accuracy of an SEC filing that turned out to be materially

7   false does not add to the scienter puzzle in the absence of

8   any facts showing that either defendant knew he was signing a

9   false SEC filing or recklessly disregarded inaccuracies

10  contained in an SEC filing.  *See In re Hertz Global Holdings*

11  *Incorporated*, 905 F.3d 106, at page 118 (Third Circuit 2018).

12  Thus, unlike *Dobina v. Weatherford Intern, Limited*, the

13  Amended Complaint lacks allegations from confidential

14  witnesses or elsewhere to suggest that any of the defendants

15  here were aware of at least some problems with internal

16  controls during the class period.  909 F. Supp. 2d 228, at

17  page 246 (Southern District of New York 2012).

18          Accordingly, for the reasons stated here and

19  discussed on the record with the parties, the Court grants the

20  Defendants' motion to dismiss Count I under Section 10(b) of

21  the Securities Exchange Act (Docket Entry Number 31) for

22  failure to plead material misrepresentations and scienter.

23  Because the Court finds that Count I fails for these reasons,

24  it need not proceed to evaluate the Defendants' third argument

25  with respect to loss causation.

1          With respect to Count II, the Court observes that the

2    Securities Exchange Act imposes liability on controlling

3    persons under Section 20(a).  15 U.S.C. Section 78t(a)

4    provides that every person who, directly or indirectly,

5    controls any person liable under Section 10(b) shall also be

6    liable jointly and severally with and to the same extent as

7    such controlled person.  *See Janus Capital Group, Incorporated*

8    *v. First Derivative Traders*, 564 U.S. 135, at page 146 (2011).

9    Such liability is derivative of an underlying violation of

10   Section 10(b) by the controlled person.  *Rahman*, 736 F.3d at

11   page 247.  Because the Court grants the Defendants' motion to

12   dismiss Count I for failure to plead an underlying violation

13   of Section 10(b), Count II of the Amended Complaint against

14   Defendants Sharma, Sitar, Roberts and Gitelman is also

15   dismissed.  *See Rahman*, 736 F.3d at page 247.

16         Finally, the Defendants request that the Court

17   dismiss the Amended Complaint *with prejudice* because Plaintiff

18   cannot cure the deficiencies with respect to material

19   misrepresentations and scienter.  (*See* Docket Entry Number

20   31-1 at page 40 and Docket Entry Number 36 at page 15).  The

21   Court agrees with the Defendants and dismisses the Amended

22   Complaint *with prejudice*.

23         Although leave to amend should be freely given when

24   justice so requires under Federal Rule of Civil Procedure

25   15(a), the Third Circuit has stated that in enacting the

1   PSLRA, Congress intended to provide a filter to screen out

2   lawsuits that have no factual basis at the pleading stage.

3   *GSC Partners*, 368 F.3d at page 246.  Congress' objective would

4   be frustrated where there is a stark absence of any suggestion

5   by a plaintiff that he or she has developed any facts since

6   the action was commenced which would, if true, cure the

7   defects in the pleadings under the heightened requirements of

8   the PSLRA.  *In re NAHC, Incorporated Securities Litigation*,

9   306 F.3d 1314, at page 1333 (Third Circuit 2002).

10  Significantly, the Third Circuit has affirmed district courts'

11  denial of plaintiffs' requests to amend securities complaints

12  where they failed to offer any additional facts that could

13  cure their deficiencies.  *See Fain*, 707 Federal Appendix, at

14  page 98; *GSC Partners*, 368 F.3d at page 246; *In re NAHC*, 306

15  F.3d at page 1333.

16         First, the Court notes that the initial complaint was

17  filed on April 5, 2018, a mere three days after Cancer

18  Genetics's allegedly corrective disclosures.  (*See* Docket

19  Entry Number 1; Docket Entry Number 31 at paragraph two).

20  After consolidation with a related action, the Amended

21  Complaint was filed on October 30, 2018.  (Docket Entry Number

22  27).  Plaintiff has offered not additional facts that could

23  cure the deficiencies identified by the Defendants, namely,

24  failure to plead misrepresentations or omissions and scienter.

25  Significantly, Plaintiff conceded on the record that as of

1   February 20, 2020, he did not gather any additional facts

2   during the preceding fourteen months to bolster his

3   allegations and address the deficiencies outlined in the

4   Defendants' motion.  The Plaintiff also did little to aid the

5   record in his briefing, where the only additional fact

6   Plaintiff proffered in support of scienter was Cancer

7   Genetics's need to raise capital for its acquisition of

8   *vivoPharm*.  (Docket Entry Number 35 at page 10).  Through

9   briefing and oral argument, the Plaintiff had ample

10  opportunity to raise additional factual allegations in light

11  of the deficiencies presented by Defendant's motion to

12  dismiss.  Yet, during oral argument Plaintiff's counsel did

13  not persuasively explain any additional facts that would cure

14  the identified deficiencies, and only indicated that he would

15  conduct a further investigation.  *See Fain*, 707 Federal

16  Appendix, at page 98.

17          Moreover, the Court finds that Defendants' own

18  statements seriously undermine scienter and support the

19  opposing inference that the Defendants realized the full

20  extent of Cancer Genetics's collections issues after they

21  hired third-party consultants.  In fact, throughout the Class

22  Period, the Defendants made a number of forward-looking

23  statements about their desire to continue collections in the

24  upcoming quarters, and many statements were accompanied by

25  risk disclosures that are relevant to the alleged fraud at

 1  issue here.  Based on the allegations in the Amended

 2  Complaint, the Defendants did not create a false pretense that

 3  collections were at or above a normalized level.  Tellingly,

 4  the Amended Complaint hinges on a mere five statements from

 5  Defendants Sharma, Sitar and Roberts during a two-year Class

 6  Period, along with select portions of four Securities Exchange

 7  Commission filings and accompanying Sarbanes-Oxley

 8  Certifications.  As previously noted, the Plaintiff has done

 9  nothing to bring additional statements or factual allegations

10  to the Court's attention.  Accordingly, the Court sees no

11  reason to permit an amendment and grants the Defendants'

12  motion to dismiss *with prejudice*.

13          An appropriate Order will accompany this Opinion.

14

15

16

17          - - - - - - - - - - - - - - - - -

18

19          I certify that the foregoing is a correct transcript

20  from the record of proceedings in the above-entitled matter.

21

22  */S/ Mary Jo Monteleone, CCR, CRCR, RPR*
          *Court Reporter*

23

24          *02/25/2020*
          *Date*

25